**CASE NO. 21-1885**

# IN THE

# 𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 𝔠𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰

## FOR THE FOURTH CIRCUIT

───────────────

KENNETH ROBINSON; CHRISTOPHER HALL,

*Plaintiffs - Appellants,*

v.

PRIORITY AUTOMOTIVE HUNTERSVILLE, INC.,
d/b/a Priority Honda Huntersville; JAMES BECKLEY*,*

*Defendants - Appellees.*

───────────────

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
AT CHARLOTTE

───────────────

**OPENING BRIEF OF APPELLANT**

───────────────

Alesha S. Brown
JUSTICE IN ACTION LAW CENTER
521 Briar Creek Road
Charlotte, NC 28205
704-500-0197
abrown@justiceinactionlaw.com

*Counsel for Appellants*

## UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

## DISCLOSURE STATEMENT

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. <u>21-1855</u>        Caption: <u>Kenneth Robinson et al v. Priority Automotive Huntersville, Inc. et al</u>

Pursuant to FRAP 26.1 and Local Rule 26.1,

<u>Kenneth Robinson and Christopher Hall</u>
(name of party/amicus)

_____

 who is _____ Appellants _____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐YES ☑NO

2.    Does party/amicus have any parent corporations?    ☐YES ☑NO
      If yes, identify all parent corporations, including all generations of parent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    ☐YES ☑NO
      If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct
    financial interest in the outcome of the litigation?                    ☐YES ☑NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)     ☐YES ☑NO
    If yes, identify any publicly held member whose stock or equity value could be affected
    substantially by the outcome of the proceeding or whose claims the trade association is
    pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?                    ☐YES ☑NO
    If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a
    party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the
    caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held
    corporation that owns 10% or more of the stock of the debtor.

7.  Is this a criminal case in which there was an organizational victim?     ☐YES ☑NO
    If yes, the United States, absent good cause shown, must list (1) each organizational
    victim of the criminal activity and (2) if an organizational victim is a corporation, the
    parent corporation and any publicly held corporation that owns 10% or more of the stock
    of victim, to the extent that information can be obtained through due diligence.

Signature: /s/: Alesha S. Brown                     Date:        8/11/2021

Counsel for: Plaintiffs

Print to PDF for Filing

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..................................................................... iii

JURISDICTIONAL STATEMENT ............................................................1

STATEMENT OF THE ISSUES.................................................................1

STATEMENT OF THE CASE.....................................................................3

    Plaintiffs' Hiring at Priority Honda ......................................................3

    Beckley's Arrival and Creation of Hostile Work Environment ...........4

    Plaintiffs' Complaints of Discrimination.............................................7

SUMMARY OF THE ARGUMENT .........................................................10

ARGUMENT .............................................................................................10

I.     Standard of Review...........................................................................10

II.    The District Court Erroneously Granted Summary Judgment on
       Plaintiffs' Unlawful Demotion Claims Because A Jury Could
       Reasonably Conclude that Plaintiffs' Demotion Was Based on
       Their Race or Racially Motivated ............................................................13

       a.   There Are Genuine Issue of Material Fact Regarding Whether
           Race Was a Motivating Factor in Demoting Plaintiffs ......................13

       b.   Plaintiffs' Demotion Claims Should Not Have Been
           Dismissed Because They Established a Prima Facie Case of
           Discrimination and Defendants Offered No Legitimate Non-
           Discriminatory Reason for Plaintiffs' Demotion ...............................16

III.   The District Court Erroneously Granted Summary Judgment on
       Plaintiffs' Hostile Work Environment and Construction
       Discharge Claims.............................................................................20

IV.   The District Court Erroneously Granted Summary Judgment on Plaintiffs' Intentional Infliction of Emotional Distress ............................25

V.   The District Court Erroneously Granted Summary Judgment on Plaintiffs' Negligent Hiring, Retention and Supervision Claims ............26

VI.   Appellants-Plaintiffs' Conversion Claims Should Not Be Dismissed ...................................................................................................29

CONCLUSION ...........................................................................................31

REQUEST FOR ORAL ARGUMENT ....................................................31

CERTIFICATE OF COMPLIANCE .......................................................32

# TABLE OF AUTHORITIES

## Cases

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ..................................................................... 11, 13

*Boyer-Liberto v. Fontainebleau Corp.*,
786 F.3d 264 (4th Cir. 2015) ........................................................... 20

*Burlington Northern and Santa Fe Ry. Co. v. White*,
548 U.S. 53 (2006) ........................................................................... 14

*Comcast Corp. v. Nat'l Ass'n of African American-Owned Media*,
140 S. Ct. 1009 (2020) ..................................................................... 13

*Diamond v. Colonial Life & Accident Ins. Co.*,
416 F.3d 310 (4th Cir. 2005) ........................................................... 12

*Edwards v. Board of Trustees of Haywood Community College*,
2016 WL 3584362 (N.C. Ct. App. July 5, 2016) .................. 27-28, 29

*Evans v. Int'l Paper Co.*,
936 F.3d 183 (4th Cir. 2019) .............................................. 18, 20, 21

*Freeman v. Dal-Tile Corp.*,
750 F.3d 413 (4th Cir. 2014) ..................................................... 21, 24

*Hailstone v. Veda*,
116 F.3d 472 (4th Cir. June 18, 1997) ............................................ 25

*Hartsell v. Duplex Products, Inc.*,
123 F.3d 766 (4th Cir. 1997) ........................................................... 25

*Henry v. Purnell*,
652 F.3d 524 (4th Cir. 2011) ........................................................... 11

*Jackson v. FKI Logistex*,
608 F. Supp. 2d 705 (E.D.N.C. 2009) ............................................. 27

*Jacobs v. N.C. Administrative Office of the Courts*,
780 F.3d 562 (4th Cir. 2015) ........................................ 10-11, 11, 12

*Jones v. Lowe's Companies, Inc.*,
2021 WL 457927 (4th Cir. Feb. 9, 2021) ........................................ 10

*Keller v. Deerfield Episcopal Retirement Community, Inc.*,
271 N.C. App. 618 (2020) ................................................................. 27

*McDonnell Douglas Corp. v. Green*,
411 U.S. 792 (1973) ........................................................................ 16

*Paschall v. Tube Processing Corp.*,
2021 WL 1390350 (S.D. Ind. Apr. 13, 2021) ................................... 23

*Tolan v. Cotton*,
572 U.S. 650 (2014) .......................................................... 11, 18, 30

*Variety Wholesalers, Inc. v. Salem Logistics Traffic Services, LLC*,
365 N.C. 520 (2012) ......................................................................... 29

*Wilson v. Prince George's County, Maryland*,
893 F.3d 213 (4th Cir. 2018) ........................................................... 11

## Statutes

28 U.S.C. § 1291 ................................................................................ 1
28 U.S.C. § 1331 ................................................................................ 1
28 U.S.C. § 1367 ................................................................................ 1
42 U.S.C. § 1981 .............................................................................. 13

## Other Authorities

10A Charles Alan Wright & Arthur R. Miller et al.,
*Federal Practice & Procedure* § 2728 (3d ed. 1998) ........................ 12

Fed. R. App. P. 34 ............................................................................ 31

Fed. R. Civ. P. 56 ............................................................................ 11

Fourth Cir. Local R. 34 .................................................................... 31

## JURISDICTIONAL STATEMENT

Appellants-Plaintiffs Kenneth Robinson ("Robinson") and Christopher Hall ("Hall") (collectively "Appellants-Plaintiffs" or "Plaintiffs") appeal from an Order granting summary judgment in favor of Appellees Priority Automotive Huntersville, Inc. d/b/a Priority Honda Huntersville ("Priority Honda") and James Beckley ("Beckley"), entered by the U.S. District Court for the Western District of North Carolina on July 8, 2021. [JA 1541]. Because Appellants-Plaintiffs' Complaint raised claims under federal and state law, the District Court had jurisdiction over this civil matter under 28 U.S.C. §§ 1331 and 1367.

On August 2, 2021, Appellants-Plaintiffs timely filed a Notice of Appeal. [JA 1542]. This Court has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

I.      Whether the District Court erroneously granted summary judgment on Appellants-Plaintiffs' unlawful demotion claims where Plaintiffs-Appellants submitted sufficient evidence creating a genuine issue of material fact for which a reasonable jury could find that Appellants-Plaintiffs' demotion was based on their race and racially motivated.

II.     Whether the District Court erroneously granted summary judgment on Appellants-Plaintiffs' hostile work environment and constructive discharge claims where Plaintiffs-Appellants submitted sufficient evidence creating a genuine issue

1

of material fact for which a reasonable jury could find (1) that Appellees' racially hostile work environment was sufficiently severe and pervasive and (2) that liability should be imputed to Appellee Priority Honda because its supervisor created the racially hostile work environment and it failed to properly investigate or resolve Appellants-Plaintiffs' complaints of discrimination.

III.    Whether the District Court erroneously granted summary judgment on Appellants-Plaintiffs' Intentional Infliction of Emotional Distress Claims where Appellants-Plaintiffs submitted sufficient evidence creating a genuine issue of material fact for which a reasonable jury could find that Appellees engaged in extreme and outrageous conduct because several of Appellees' intentional racially charged acts and omissions were done with the intent to cause Appellants-Plaintiffs severe emotional distress and did in fact cause Appellants-Plaintiffs severe emotional distress.

IV.    Whether the District Court erroneously granted summary judgment on Appellants-Plaintiffs' negligent hiring retention and supervision claims where Appellants-Plaintiffs submitted sufficient evidence creating a genuine issue of material fact for which a reasonable jury could find that (1) Appellee James Beckley committed and/or caused to be committed the tortious act of conversion; (2) Appellee Priority Honda knew or should have known that Defendant James Beckley was incompetent because he was inherently unfit in that he was unable to become

the General Manager of the dealership without committing tortious acts and treating employees different on the basis of race; and (3) Appellee James Beckley committed a tortious act that resulted in injury to Appellants-Plaintiffs when he threw away their personal belongings without reason while taking their working spaces without reason.

V.      Whether the District Court erroneously granted summary judgment on Plaintiffs' conversion claims where Plaintiffs-Appellants submitted sufficient evidence creating a genuine issue of material fact for which a reasonable jury could find that Defendant Beckley threw away their personal belongings, or instructed someone to throw away their personal belongings, on the first night he came to the dealership without reason and that depriving Appellants-Plaintiffs of their personal property without reason constituted wrongful possession and conversion.

## STATEMENT OF THE CASE

Plaintiffs' Hiring at Priority Honda

In May 2018, Plaintiff Hall was hired as a sales manager at Priority Honda located at 12815 Statesville Rd Huntersville, NC 28078 ("Honda store," "Priority Honda," "Dealership"). [JA 732]. Due to his exceptional performance, Robinson never received any negative feedback or reviews.[1] [JA 748].

---

[1] Priority Honda did not provide Plaintiffs with any formal performance evaluations throughout their employment at Priority Honda.

In September 2018, Plaintiff Robinson was hired as a salesman. [JA 783]. Although Priority Honda did not conduct formal performance evaluations, Robinson's exceptional performance is demonstrated by his promotion to new car sales manager in July 2019, just ten (10) months after his start date. [JA 802]. Due to his exceptional performance, Robinson never received any negative feedback or reviews. [JA 977]. Due to the efforts of employees like Plaintiffs, between May 2018 and July 2019, sales at the Honda Store were exceptional. [JA 732, 977, 979]. According to Sam Asaad, a former General Manager at Priority Honda who worked with Plaintiffs, Plaintiff Robinson consistently outperformed and exceeded monthly expectations by mid-month. [JA 979]. Sam Asaad also declares that Plaintiff Hall was also an exceptional sales manager whose leadership continually helped the dealership thrive. [JA 979]. According to Michael Gaston, a salesman at Priority Honda, Plaintiffs "would close deals quickly and provide support for salesmen like [him] and customers." [JA 1121]. Defendants did not and cannot offer any evidence to dispute Plaintiffs' exceptional work performance.

Beckley's Arrival and Creation of Hostile Work Environment

On July 19, 2019, Beckley arrived at Priority Honda and it was announced on that day that he would be the General Manager of the store. [JA 1000]. On that day, the racially hostile work environment began. [JA 732, 977, 1121, 1124]. At an initial meeting, Beckley stated in the front of the entire store that he would "make Priority

Great Again," a slogan in reference to former President Donald Trump's presidency that was inappropriate and offensive to employees of color. [JA 742, 832-36, 1121, 1124].

Beckley furthered his creation of a racially hostile work environment by reorganizing the store in a way that physically separated Plaintiffs and isolated them from all other managers. [JA 744, 831, 744, 1124-25]. Not only did Beckley rearrange the store, but he instructed salesmen to only report sales to white sales managers and not Plaintiffs, which prevented Plaintiffs- the only black sales managers- from doing their jobs. [JA 733, 926, 1124-25]. Beckley avoided Plaintiffs and refused to give them a pay plan, which Diane Ulmer, Priority Honda's Controller, testified was Beckley's responsibility to do as General Manager. [JA 1137].

Shockingly, during Beckley's reorganization on his first day at the store, he stayed late and threw away Plaintiffs' personal belongings at their desks without any justification. [JA 734-35, 955-58]. When Plaintiffs asked about their belongings, another employee, Danny Poli indicated Beckley instructed for Plaintiffs' belongings to be thrown in the dumpster. [JA 632, 941]. Also, Beckley, without any reason or justification, referred to Plaintiffs and other African-American employees as "thugs." [JA 1124, 1347]. Specifically, Plaintiffs and employees Michael Gaston (African-American), Quinton Alston (African-American), and Kyle Vasquez

(Hispanic) were standing in a group speaking to one another when Beckley called Vasquez to speak with him. [JA 737, 867, 1124]. When Vasquez returned to the group, he notified them that Beckley told him to "stop hanging with those thugs." [JA 737, 867, 1124]. Importantly, Plaintiffs, nor any of the other African-American employees are "thugs." [JA 748 ,977 1124]. When Beckley became aware that Kyle Vasquez was leaving after he made the thug comment, Beckley approached Kyle Vasquez and stated, "take Kenny, Chris and Quinton with you," referring to all African-American employees. [JA 1376].

As the work days continued on, racially hostile occurrences continued. For instance, Beckley played a recording of an African American sales manager, Robert Gathers and criticized him in front of the entire staff. [JA 737-41, 833-35]. Beckley humiliated Gathers in a way that caused Gathers to be in tears as he expressed his frustration of the unprecedented incident to Plaintiffs and other African-American employees. [JA 737-41, 833-35]. Additionally, another salesperson, Wallah Richardson, reported to Plaintiff Robinson that he heard a Caucasian sales manager state to another Caucasian sales manager that he needed "to come over to the white side" because they were "back in power." [JA 879-80].

Beckley's negligent, intentional and malicious actions led to an unbearable hostile work environment where Plaintiffs had no idea what their role was at Priority Honda because Beckley would not provide Plaintiffs with instruction regarding their

6

positions and ignored Plaintiffs' efforts to obtain clarity. [JA 736]. Ulmer testified that the General Manager is responsible for communicating information and instruction to sales managers and that it is important for an employee to know whether he is a salesman or a sales manager because that affects their job performance. [JA 1159]. Stacy Cummings, Priority Honda's Secretary, Vice President and Chief Finance Officer, testified that every employee should be aware of their role at the company. [JA 1409]. Plaintiffs were unable to perform because of Beckley's actions and were at work without any tasks to complete due to Beckley's actions. [JA 748, 977, 1123-24]. When Plaintiffs tried to request information regarding their positions, Beckley told them to "keep doing what you're doing," even though Plaintiffs clearly could not continue on in their normal roles as sales managers because Beckley had already instructed salesmen to not take their sales to Plaintiffs, and finalizing sales (as sales managers) was their primary job. [JA 748, 977, 1123-24].

Plaintiffs' Complaints of Discrimination

Priority Honda's Employee Handbook provides "If you feel uncomfortable speaking with your supervisor about an issue or problem for any reason, or feel that that the problem or issue has not been adequately addressed, the door to executive management and Human Resources is always open and you should feel free to bring any such issues or problems directly to the attention of Human Resources or

executive management." [JA 1460]. Accordingly, on several occasions Plaintiffs reported the issues of discrimination and not receiving a pay plan. [JA 915-16]. After making several attempts to report issues of discrimination, Plaintiff Robinson made another attempt via writing to Human Resources on July 23, 2019 when he, again, reported the issues of a racially hostile work environment and Beckley's failure to communicate with Plaintiffs- despite Beckley communicating with non-African American sales managers- and requested clarity regarding their positions and roles at Priority Honda. [JA 856, 913, 917 1525]. Plaintiff Hall also attempted to make several reports of the discrimination and also made a complaint in writing to Matthew Ellmer, Priority Honda's Chief Operations Officer. [JA 1527-29].

After such complaints were made by Plaintiffs, Diane Ulmer asked to meet with Plaintiff Robinson to discuss his complaints on July 23, 2019. [JA 1177]. Shockingly, Ulmer's investigation into Plaintiffs' complaints began on July 23, 2019 at 1:04 pm and ended on the same day at approximately 3:00 pm. [JA 1177, 1430]. The investigation into Plaintiffs' complaints lasted less than two (2) hours. [JA 1177, 1430]. And, despite the severity of Plaintiffs' complaints, Ulmer failed to interview key witnesses such as Kyle Vasquez and Quiton Alston and, in fact, did not speak with anyone other than Beckley about the thug comment. [JA 1179]. Ulmer also did not speak with any African American employees about the "Make Priority Great Again" comment. [JA 1185]. Contrary to Ulmer's lackluster investigation, Stacy

Cummings, Priority Honda's Secretary, Vice President and Chief Finance Officer, testified that an investigation should include interviewing witnesses. [JA 1406].

When Plaintiff Robinson met with Ulmer, unbeknownst to Plaintiff Robinson, Beckley was present at the meeting to discuss his complaints about Beckley. [JA 869]. At that meeting, Beckley admitted to referring to Plaintiffs and other African-American employees as thugs stating "he didn't mean it like that." [JA 872-73]. Beckley also tried to explain why he used the term "Make Priority Great Again." [JA 872-73]. Also at that meeting, Robinson was presented with a "blue slip" memorializing and formalizing his unlawful demotion. [JA 872-73]. After Mr. Robinson refused to agree to the demotion, Beckley stated "I'm not racist, my wife is Puerto Rican." [JA 871-72].

Diane Ulmer also invited Plaintiff Hall to meet with her and Beckley. [JA 748]. However, Plaintiff Hall decided not to attend because, mentally and emotionally, he could not sit through a meeting with Beckley to complain about the very same person who caused him to have to suffer through an intensely racially hostile work environment. [JA 748]. Due to Defendants' actions, both Plaintiffs were demoted and forced to constructively terminate their employment. [JA 748, 899]. Importantly, Plaintiffs were demoted so that Beckley could have a management team with no African-American sales managers- including members from a team he brought with him when he first arrived at Priority Honda. [JA 1121-22, 1124-25].

9

## SUMMARY OF THE ARGUMENT

It is well-settled that discrimination in the workplace is unlawful. The District Court erred when it granted Defendants-Appellees summary judgment on Appellants-Plaintiffs' claims of (1) unlawful demotion; (2) hostile work environment; (3) constructive discharge; (4) intentional infliction of emotional distress; (5) negligent hiring supervision and retention; and (6) conversion. The District Court's Order is erroneous because it does not view the totality of the evidence submitted in a light most favorable to Appellants-Plaintiffs, which is the appropriate standard at summary judgment. Because Appellants-Plaintiffs submitted sufficient evidence to create genuine issues of material fact for which a jury can reasonably find in favor of all of Appellants-Plaintiffs' claims, this Court should reverse the District Court's Order granting summary judgment and remand for a jury trial.

## ARGUMENT

### I.    Standard of Review

Because "[d]istrict courts are too quick to grant summary judgment," and the Memorandum and Order at issue "reflects a clear misapprehension of summary judgment standards," Plaintiffs provide the following detailed explanation of the applicable standard of review. *Jones v. Lowe's Companies, Inc.*, 2021 WL 457927, at *9 (4th Cir. 2021) (Floyd, J., dissenting in part); *Jacobs v. N.C. Administrative*

*Office of the Courts*, 780 F.3d 562, 568 (4th Cir. 2015) (quoting *Tolan v. Cotton*, 572 U.S. 650, 659 (2014) (per curiam)).

This Court reviews a district court's summary judgment order *de novo*. *See Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011). Summary judgment should not be granted unless "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Wilson v. Prince George's County, Maryland*, 893 F.3d 213, 218 (4th Cir. 2018). A court's function at summary judgment "is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Tolan*, 572 U.S. at 656 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)) (emphasis added). And a court "may not resolve genuine disputes of fact in favor of the party seeking summary judgment." *Tolan*, 572 U.S. at 656. Furthermore, it is not a reviewing court's function on summary judgment to "make credibility determinations." *Jacobs*, 780 F.3d at 569 (citing *Anderson*, 477 U.S. at 255).

To determine whether genuine disputes of material fact exist, "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in the [non-movant's] favor." *Anderson*, 477 U.S. at 255. "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Jacobs*, 780 F.3d at 568 (quoting *Anderson*, 477 U.S. at 248) (emphasis added). Accordingly, summary

judgment "cannot be granted merely because the court believes that the movant will prevail if the action is tried on the merits." *Jacobs*, 780 F.3d at 568–69 (citing 10A Charles Alan Wright & Arthur R. Miller et al., *Federal Practice & Procedure* § 2728 (3d ed. 1998)).

This court has consistently held that "a Title VII plaintiff may avert summary judgment through two avenues of proof." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 318 (4th Cir. 2005). The Court explained:

> "A plaintiff can survive a motion for summary judgment by presenting direct or circumstantial evidence that raises a genuine issue of material fact as to whether an impermissible factor such as race motivated the employer's adverse employment decision. [citations omitted]. Pursuant to the 1991 Act, the impermissible factor need not have been the sole factor. As long as it motivated the adverse action, the plaintiff can establish an unlawful employment practice. [citations omitted]. Alternatively, a plaintiff may proceed under the McDonnell Douglas pretext framework, under which the employee, after establishing a prima facie case of discrimination, demonstrates that the employer's proffered permissible reason for taking an adverse employment action is actually a pretext for discrimination." *Id*.

Here, Plaintiffs presented sufficient direct and circumstantial evidence that presented genuine issues of material fact regarding whether Plaintiffs' race was the motivating factor, and, at minimum, a motivating factor in Plaintiffs' demotion, constructive termination, and hostile work environment. Plaintiffs also established a prima facie case and pretext for discrimination under the *McDonnell Douglas* burden-shifting framework. Plaintiffs also presented evidence that created a genuine issue of fact regarding whether but for Plaintiffs' race, the Plaintiffs "would not have

suffered the loss of a legally protected right" to prove their claims pursuant to 42

U.S.C. §1981 ("Section 1981 claims"). *Comcast Corp. v. Nat'l Assoc. of African American-Owned Media*, 140 S.Ct. 1009, 1019 (2020). Accordingly, the District

Court should not have granted summary judgment on Plaintiffs' demotion,

constructive termination or hostile work environment claims because doing so was

a resolution of genuine issues of material fact that were decided without drawing all

justifiable inferences in Plaintiffs' favor. *Anderson*, 477 U.S. at 255.

II.    **The District Court Erroneously Granted Summary Judgment on Plaintiffs' Unlawful Demotion Claims Because A Jury Could Reasonably Conclude that Plaintiffs' Demotion Was Based on Their Race or Racially Motivated**

a.    **There Are Genuine Issues of Material Fact Regarding Whether Race Was a Motivating Factor in Demoting Plaintiffs**

Plaintiffs' unlawful demotion claims should not have been dismissed by the

lower court because a proper examination of the Record demonstrates that Plaintiffs

presented sufficient evidence that raised a genuine issue of material fact regarding

whether race was *a*, if not *the*, motivating factor in Plaintiffs' demotion. In granting

summary judgment on Plaintiffs' unlawful demotion claims, the lower court ignored

the evidence demonstrating that immediately upon his arrival as General Manager

at the store, Defendant Beckley instructed salesmen to not take any sales to Plaintiffs

who were the only African-American sales managers. [JA 733, 926, 1124-25].

Michael Gaston, a former salesman at Priority Honda, stated in his declaration, "He

13

[Beckley] took away their [Plaintiffs'] ability to perform and close deals as managers." [JA 1121-22]. And, Plaintiffs both testified and declared that several salesmen told him they were "instructed to not bring sales to" them, which prevented Plaintiffs "from being able to perform [their] job duties as sales managers." [JA 733, 748-49, 926, 977].

Prior to Beckley's arrival, Plaintiffs were sales managers and their primary job was to finalize deals on car sales brought to them by salesmen. [JA 733, 748-49, 926, 977]. When Beckley instructed salesmen to not take any deals to Plaintiffs, Plaintiffs were unable to perform their jobs as sales managers. [JA 733, 748-49, 926, 977]. Instructing salesmen to not take sales to Plaintiffs constituted a demotion as soon as Beckley became General Manager. *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 55 (2006) ("a reassignment of duties can constitute retaliatory discrimination"). Importantly, Beckley did not demote Plaintiffs' non-African American sales manager counterparts by instructing salesmen to not take sales to them. Defendants' unlawful demotion of Plaintiffs was memorialized by a blue slip. [JA 872-73]. This evidence alone, when viewed in a light most favorable to Plaintiffs, should have prevented summary judgment.

The lower court erred because it not only completely ignored the evidence demonstrating that Beckley immediately demoted Plaintiffs from being sales managers, but the court also ignored declarations of Michael Gaston, Quinton Alston

14

and Plaintiffs (sworn testimony) that indicate (1) Beckley referred to Plaintiffs and other African American employees as thugs [JA 1124, 1347]; (2) Beckley told an employee to take Plaintiffs and another African-American employee with him when that employee notified Beckley he would be leaving the dealership [JA 1376]; (3) Plaintiffs were physically isolated from other non-African American sales managers to prevent them from closing deals [JA 744, 831, 744, 1124-25]; (4) Beckley took away Plaintiffs' desk/work areas where they would close deals [JA 734-35, 955-58]; (5) Beckley and those working under his direction threw Plaintiffs' personal belongings away on his first night in the store without reason [JA 734-35, 955-58]; (6) Beckley stated he would "Make Priority Honda Great Again," which offended employees of color, including Plaintiffs [JA 742, 832-36, 1121, 1124]; (7) Beckley created a racially hostile work environment that was so blatant that it made another white employee comfortable to tell other Caucasian employees to "come to the white side" because they were "back in power" and more. [JA 879-80]. None of these occurrences happened to or impacted non-African American sales managers. If all of this evidence were considered and viewed most favorably to Plaintiff, summary judgment would not have been granted because the evidence demonstrates there is a genuine issue of fact regarding Defendants' reasons for demoting Plaintiffs. Therefore, Plaintiffs' unlawful demotion claims should not have been dismissed.

15

**b. Plaintiffs' Demotion Claims Should Not Have Been Dismissed Because They Established a Prima Facie Case of Discrimination and Defendants Offered No Legitimate Non-Discriminatory Reason for Plaintiffs' Demotion**

Despite the overwhelming evidence demonstrating there's a genuine issue of material fact regarding whether Plaintiffs' demotions were based on Plaintiffs' race, the lower court held "[f]or the reasons previously stated, Plaintiffs' have not shown direct evidence of discrimination or circumstances permitting a reasonable inference of race discrimination." [JA 1537]. The lower court listed the elements of a *prima facia* case of discrimination under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), but did not give any reasoning or justification for its finding that Plaintiffs did not present evidence of circumstances permitting a reasonable inference of race discrimination.

Under the *McDonnell Douglas* framework, Plaintiff must establish a prima facie case of discrimination by showing: "(1) he is a member of a protected class; (2) he suffered an adverse employment action; (3) he suffered this action despite performing his job in accordance with the employer's legitimate expectations; and (4) the circumstances gave rise to an inference of unlawful discrimination." *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Plaintiffs' Title VII and Section 1981 claims are governed by the same burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

16

Here, first, it is undisputed that Plaintiffs are African-American males. [JA 10]. Second, it is also undisputed that Plaintiffs suffered an adverse employment action when they were demoted. Third, evidence offered by Plaintiffs also demonstrates that Plaintiffs were exceptional sales managers and under their management the dealership performed exceptionally. [JA 748, 802, 977, 979, 1121]. According to Sam Asaad, a former General Manager at Priority Honda who worked with Plaintiffs, Plaintiff Robinson consistently outperformed and exceeded monthly expectations by mid-month. [JA 979]. Sam Asaad also declares that Plaintiff Hall was also an exceptional sales manager whose leadership continually helped the dealership thrive. [JA 979]. According to Michael Gaston, a salesman at Priority Honda, Plaintiffs "would close deals quickly and provide support for salesmen like [him] and customers." [JA 1121]. Defendants did not and cannot offer any evidence to dispute Plaintiffs' exceptional work performance. This evidence was presented to the lower court and demonstrates Plaintiffs suffered a demotion despite their performance. At minimum, this evidence demonstrates there is a material issue of fact regarding whether Plaintiffs were demoted despite performing their jobs as sales managers in accordance with legitimate expectations.

Fourth, the lower court erred when it found "[f]or the reasons previously stated, Plaintiffs have not shown direct evidence of discrimination or circumstances permitting a reasonable inference of race discrimination." [JA 1537]. This finding

by the lower court is erroneous for several reasons. First, the reasons previously stated by the lower court pertained to Plaintiffs' hostile work environment claims, which are governed by a completely different standard and elements than Plaintiffs' unlawful demotion claims. *Evans v. Int'l Paper Co.*, 936 F.3d 183, 192 (4th Cir. 2019) (For a hostile work environment constructive discharge claim, Plaintiffs must show (1) they experienced unwelcome harassment; (ii) the unwelcome harassment was based on race; (iii) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and (iv) there is some basis for imposing liability on the employer).     The     lower's     court's holding regarding Plaintiffs' unlawful demotion claims is also erroneous because it "weigh[ed] the evidence and determine[d] the truth of the matter" instead of determining "whether there is a genuine issue for trial." *Tolan*, 572 U.S. at 656. The conclusory statement that Plaintiffs did not demonstrate circumstances permitting a reasonable inference of race discrimination is not supported by the overwhelming evidence Plaintiffs presented to demonstrate an inference of race discrimination. Namely, Plaintiffs offered evidence that Plaintiffs, the only two African-American sales managers, were the only sales managers who Beckley demoted and told salesmen to not take sales to close deals, which effectively took away Plaintiffs' jobs. [JA 733, 926, 1124-25]. Beckley did this without speaking to Plaintiffs. [JA 736, 820]. Beckley did not tell salesmen to refrain from taking deals to non-African

American sales managers and did not demote non-African American sales managers. [JA 733, 926, 1124-25]. Beckley only instructed salesmen to do so to Plaintiffs who were African-American sales managers. [JA 733, 926, 1124-25].

Plaintiffs also offered evidence that they were the only sales managers who were isolated by Beckley further causing them to be unable to close deals as their job required. [JA 744, 831, 744, 1124-25]. This did not happen to any other non-African American sales managers. [JA 744, 831, 744, 1124-25]. Plaintiffs also offered evidence that Beckley called Plaintiffs and other African American employees "thugs." [JA 737, 748, 867, 977, 1124, 1347]. Beckley did not refer to any other non-African American employees as thugs. [JA 737, 748, 867, 977, 1124, 1347]. Plaintiffs also offered evidence that their work space and personal belongings were thrown away by Beckley on the first night he arrived at the store. [JA 632, 734-35, 941, 955-58]. Beckley did not throw away, and did not instruct any other employees to throw away, belongings of non-African-American sales managers. [JA 632, 734-35, 941, 955-58]. Plaintiffs also offered evidence that Beckley told an employee to take Plaintiffs and another African-American employee with him when that employee notified him he would be leaving the dealership [JA 1376]. Beckley did not tell the employee to take any non-African-American sales managers or employees with him as he was leaving the dealership.

19

Plaintiffs did not offer one or two occurrences, but instead offered a plethora of evidence regarding the continuous and multiple incidents that demonstrate Beckley discriminated against them on the basis of their race. Plaintiffs' evidence was sufficient for a reasonable jury to find an inference of discrimination. Plaintiffs' evidence was sufficient for a reasonable jury to find that but for Plaintiffs' race, they would not have been demoted. The lower court's own reasoning and the lack thereof demonstrates that it erred because it ignored evidence presented by Plaintiffs and did not draw all inferences in Plaintiffs' favor when it determined that Plaintiffs' unlawful demotion claims should be dismissed as a matter of law.

### III. The District Court Erroneously Granted Summary Judgment on Plaintiffs' Hostile Work Environment and Construction Discharge Claims

Based on the same occurrences listed in Section II, the lower court erroneously dismissed Plaintiffs' hostile work environment and Constructive Discharge claims. As noted by the lower court:

> A hostile work environment is present "when the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive work environment." *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 277 (4th Cir. 2015). For a hostile work environment constructive discharge claim, Plaintiffs must show (1) they experienced unwelcome harassment; (ii) the unwelcome harassment was based on race; (iii) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and (iv) there is some basis for imposing liability on the employer. *Evans v. Int'l Paper Co.*, 936 F.3d 183, 192 (4th Cir. 2019). Because Plaintiffs resigned, the must also show Defendants

"discriminated against them "to the point where a reasonable person in their position would have felt compelled to resign." *Id*. Plaintiffs must prove two additional elements to maintain the constructive discharge aspect of their claims: (v) the deliberateness of Priority's alleged actions motivated by racial bias; and (vi) the objective intolerability of their working conditions." *Freeman v. Dal-Tile Com*, 750 F.3d 413, 425 (4th Cir. 2014).

Here, it is undisputed that Plaintiffs experienced unwelcome harassment when the occurrences listed above occurred. Plaintiffs presented sufficient evidence for a reasonable jury to find that such occurrences were based on race and that the harassment Plaintiffs endured was sufficiently severe and pervasive to alter Plaintiffs' conditions of employment and create an abusive atmosphere. The lower court's finding that there is no basis to impute liability to Priority is error because Defendant Priority Honda has no affirmative defense against the imputation of liability for Beckley's unlawful and discriminatory conduct because, instead of addressing Plaintiffs' complaints about the racially hostile work environment and preventing the harassment from continuing to occur, Diane Ulmer, Defendant's controller, blindsided Plaintiff Robinson into attending a meeting with Beckley, Defendant's very same employee who engaged in unlawful behavior and caused the hostile work environment. [JA 869]. At that meeting, Beckley admitted to referring to Plaintiffs and other African American employees as thugs stating "he didn't mean it like that." [JA 872-73]. Beckley also tried to explain why he used the term "Make

Priority Great Again." [JA 872-73]. Beckley was not reprimanded for his discriminatory actions.

Even after Plaintiffs constructively terminated, Defendant Priority Honda still failed to address any harassing behavior, which is evidenced by other African American employees leaving the dealership due to the racially hostile work environment (e.g., Quinton Alston stated "[b]ecause of the racism and hostility that was brought on by Beckley's leadership, I left the dealership shortly after Beckley became General Manager"). [JA 1125]. Additionally, Defendant Priority Honda added to the racially hostile work environment by failing to investigate Plaintiffs' complaints as they should have been investigated. The investigation into Plaintiffs' complaints began on July 23, 2019 at 1:04 pm and ended on the same day at approximately 3:00 pm. [JA 1177, 1430]. Investigation into Plaintiffs' complaints lasted less than two (2) hours. [JA 1177, 1430]. And, despite the severity of Plaintiffs' complaints, Defendant Priority Honda failed to interview key witnesses such as Kyle Vasquez and Quiton Alston and, in fact, did not speak with anyone other than Beckley about the thug comment. [JA 1179]. Defendant Priority Honda also failed to speak with any African-American employees about the "Make Priority Great Again" comment, [JA 1185], even though Stacy Cummings, Priority Honda's Secretary, Vice President and Chief Finance Officer, testified that an investigation should include interviewing witnesses. [JA 1406]. Contrary to the lower court's

findings, Plaintiffs did not "ignore Priority's efforts to investigate" because during the two (2) hours Priority held an investigation, Plaintiffs were not contacted about witnesses or notified there was any investigation into their complaints. Instead, Plaintiff Robinson was blindsided into a meeting with Beckley, the same supervisor who created the hostile work environment. [JA 869]. Plaintiffs sought redress since the day Beckley became General Manager and all of Plaintiffs' efforts were met with more hostile and retaliatory action (e.g. forcing Plaintiff Robinson to meet with Beckley after he made comments about Beckley's racial discrimination and failing to conduct an adequate investigation). Plaintiffs have presented sufficient evidence for a reasonable jury to find that Defendants' discriminatory actions were deliberate and motivated by Plaintiffs' race. A reasonable jury can also find that the evidence presented by Plaintiffs were objectively intolerable because Defendants' actions created an environment where Plaintiffs could not perform any of their job duties, which were unlawfully taken away from them based on their race.

The lower court used the case law above to erroneously find that "the admissible evidence in the record is insufficient to create a material issue of fact as to the hostile work-environment- constructive discharge claim." [JA 1535-36]. The lower court focused on the "make Priority great again" statement and cited *Paschall v. Tube Processing Corp*., 2021 WL 1390350, at *23-24 (S.D. Ind. Apr. 23, 2021)

to find that the statement is "clearly not actionable under Title VII." [JA 1536]. Here, the "make Priority great again" comment is not the only instance that occurred and as such cannot be viewed alone. Instead, the comment must be viewed in a light most favorable to Plaintiff under the totality of the circumstances, which include (1) the "make Priority great again" comment, (2) the occurrences above; (3) Beckley playing a call in front of the entire staff to embarrass a black manager resulting in him being in tears due to the humiliation [JA 737-41, 833-35]; and (4) Beckley created a racially hostile work environment that was so blatant that it made another white employee comfortable to tell other Caucasian employees to "come to the white side" because they were "back in power" and more. [JA 879-80]. *See Freeman v. Dal-Tile Corp.*, 750 F.3d 413, 421 (4th Cir. 2014) ("when determining whether the harassing conduct was objectively severe or pervasive, we must look at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. "No single factor is dispositive"). Here, when viewing all of the circumstances in a light most favorable to Plaintiffs, a reasonable jury could find that Defendants' conduct was objectively severe and pervasive because (1) all of the occurrences demonstrate a frequency of conduct; (2) calling Plaintiffs thugs, taking away their ability to

perform their jobs and throwing away their personal belongings and more was sufficiently severe; and (3) telling salesmen to not bring sales to Plaintiff's to close deals absolutely interfered with Plaintiffs' ability to perform as sales managers. Therefore, it was error to dismiss the "Make Priority Great Again" comment and then focus on the thug comment as a "single offhand comment" in light of the other frequent occurrences Plaintiffs presented to the lower court. Importantly, the lower court's finding that "Plaintiffs' other allegations similarly fail" demonstrate that the lower court did not view the totality of evidence in a light most favorable to Plaintiffs. [JA 1536]. As such, the lower court's dismissal of Plaintiffs' hostile work environment and constructive discharge claims should be reversed.

## IV.    The District Court Erroneously Granted Summary Judgment on Plaintiffs' Intentional Infliction of Emotional Distress

To establish a claim for intentional infliction of emotional distress, a plaintiff must prove (1) extreme and outrageous conduct; (2) which is intended to cause and does cause (3) severe emotional distress." *Hartsell v. Duplex Products, Inc.*, 123 F.3d 766, 774 (4th Cir. 1997). The Fourth Circuit has explained that a "threshold showing for such a claim is of "outrageous and intolerable' conduct that offends generally accepted standard of morality and decency." *Hailstone v. Veda*, 116 F.3d 472, *2 (4th Cir. June 18, 1997). Here, a reasonable jury can find that the following collective action constitutes outrageous and intolerable conduct: (1) Beckley stating

on his first day that he would "Make Priority Honda Great Again," which offended the employees of color at the meeting; (2) reorganizing the store on his first day to isolate Plaintiffs and take away their space where they worked to close deals as sales managers; (3) threw away Plaintiffs' personal belongings without reason or notification; (4) instructed salesmen to not report sales to Plaintiffs, which left Plaintiffs with no work for days because, as sales managers, it was their job to close deals as they done exceptionally prior to Beckley's arrival; (5) referring to Plaintiffs and two (2) other African American employees as thugs; (6) telling Kyle Vasquez to take Plaintiffs and another African American employee with him when Vasquez notified Defendants he would be ending employment with Priority Honda; (7) creating a work environment where Caucasian employees were telling other employees to "come to the white side;" and (8) playing a video recording of African-American Robert Gathers to humiliate him in front of the entire staff. Additionally, Plaintiffs submitted evidence that they were both severely distressed due to Beckley's unlawful conduct. [JA 743, 920-21]. Accordingly, Plaintiffs' intentional infliction of emotional distress claims should not have been dismissed as a matter of law.

### V.    The District Court Erroneously Granted Summary Judgment on Plaintiffs' Negligent Hiring, Retention and Supervision Claims

To state a claim for negligent hiring supervision and retention a plaintiff must prove "(1) the specific negligent act on which the action is founded; (2)

incompetency, by inherent unfitness or previous specific acts of negligence, from which incompetency may be inferred; (3) either actual notice to the master of such unfitness or bad habits, or constructive notice, by showing that the master could have known the facts had he used ordinary care in oversight and supervision; and (4) that the injury complained of resulted from the incompetency proved. *Keller by and through Keller v. Deerfield Episcopal Retirement Community, Inc.*, 271 N.C.App. 618, 628 (2020). North Carolina courts have held that a claim for negligent hiring, retention and supervision "requires a common-law tort to underly a negligent retention and supervision claim." *Jackson v. FKI Logistex*, 608 F.Supp.2d 705, 707 (E.D.N.C. 2009).

Appellants-Plaintiffs submitted sufficient evidence for a reasonable jury to find the first element is met because it is undisputed that Beckley stayed late on his first night of being General Manager at the dealership and threw away Plaintiffs' personal belongings they owned without their knowledge or authority and without reason. [JA 632, 734-35, 941, 955-58]. Therefore, Appellants-Plaintiffs presented evidence for a reasonable jury to conclude that Beckley committed the tort of conversion and Priority Honda is vicariously liable for Beckley's actions. *See Edwards v. Board of Trustees of Haywood Community College*, 2016 WL 3584362, at *5 (N.C.App. July 5, 2016) ("Conversion is defined as an unauthorized assumption and exercise of the right of ownership over goods or personal chattels

27

belonging to another, to the alteration of their condition or the exclusion of an owner's rights. The two essential elements are necessary in a claim for conversion: (1) ownership in the plaintiff, and (2) a wrongful conversion by the defendant").

Appellants-Plaintiffs submitted sufficient evidence for a reasonable jury to find the second element is met because Plaintiff Hall testified that Beckley had previously engaged in similar discriminatory and negligent behavior at Scott Clark Honda, another car dealership," thereby demonstrating previous acts of negligence from which incompetency may be inferred. [JA 745-46]. And, Beckley's blatantly discriminatory actions at Priority Honda (e.g. referring to black employees as thugs, making political statements in front of an entire staff, isolating Appellants-Plaintiffs and telling salesmen not to take sales to Appellants-Plaintiffs, but not instructing salesmen to do the same with non-African American sales managers, demoting Appellants-Plaintiffs on the basis of their race and more) and other dealerships demonstrate inherit unfitness that Priority Honda knew or should have known about prior to hiring Beckley to be its General Manger. Had Priority Honda exercised ordinary care and oversight, it would have researched Beckley's past actions as a General Manager and known he was inherently unfit to lead the dealership. Indeed, Priority Honda's lack of an adequate investigation into Appellants-Plaintiffs' complaints of discrimination and its failure to reprimand Beckley for his unlawful actions led to Appellants-Plaintiffs' constructive termination and the resignation of

28

other African-American employees even after Appellants-Plaintiffs were constructively terminated. [JA 1125]. The evidence presented is sufficient for a reasonable jury to find that due to Priority Honda's negligence in hiring and retaining Beckley, Appellants-Plaintiffs are without their personal belongings, some of sentimental value that are irreplaceable. As such, when viewing these facts in light most favorable to Appellants-Plaintiffs, the lower court erred when it dismissed Appellants-Plaintiffs' negligence and negligent hiring, retention and supervision claims.

## VI.    Appellants-Plaintiffs' Conversion Claims Should Not Be Dismissed

To prove a conversion claim Plaintiffs must show ownership in the plaintiff and wrongful possession or conversion by the defendant. *Variety Wholesalers, Inc. v. Salem Logistics Traffic Services, LLC*, 365 N.C. 520, 523 (2012). "Conversion is defined as an unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner's rights." *See Edwards v. Board of Trustees of Haywood Community College*, 2016 WL 3584362, at *5 (N.C.App. July 5, 2016). As argued above, Appellants-Plaintiffs submitted sufficient evidence for a reasonable jury to find Beckley committed the tort of conversion and Priority Honda is vicariously liable for Beckley's actions because it is undisputed that (1) Plaintiffs had ownership of their personal belongings in their desks and (2) Beckley stayed late on his first

night of being General Manager at the dealership and threw away Plaintiffs' personal belongings they owned without their knowledge or authority and without reason. [JA 734-35, 955-58].

The lower court's reasoning for dismissing Appellants-Plaintiffs' conversion claims is error because the court weighed the evidence to determine the truth of the matter instead of determining whether there was a genuine issue for trial, which in this case, there is. *Tolan*, 572 U.S. at 656. The lower court reasoned "Plaintiffs concede that Beckley's reorganization of the showroom was within his discretion." [JA 1540]. However, reorganizing the showroom did not give Beckley the authority to wrongfully possess and throw away Appellants-Plaintiffs' personal belongings, thereby committing the tort of conversion. The lower court erroneously found that Appellants-Plaintiffs "assumed that their personal belongings were moved during this reorganization." [JA 1540]. This reasoning is contrary to the evidence submitted by Appellants-Plaintiffs that unequivocally demonstrated that when they returned to work the day after Beckley became General Manager, their personal belongings were gone and they were told by another employee that their belongings were in the dumpster. [JA 632, 941]. Plaintiff Robinson testified that another employee named Danny Poli told him that Beckley instructed employees to throw their belongings away. [JA 632]. This evidence demonstrates that Plaintiffs did not assume their belongings were thrown away. Plaintiffs returned to work, their belongings were

30

gone, and they were told they were in the dumpster. This evidence also demonstrates the lower court erred in finding "Plaintiffs concede they took no actions to locate and retrieve their belongings" because Plaintiffs did in fact try to locate their belongings. [JA 632]. To physically retrieve their belongings, Appellants-Plaintiffs would have had to search through a dumpster. [JA 632]. Thus, the evidence offered by Appellants-Plaintiffs was sufficient to create a genuine issue of material fact for a reasonable jury to conclude that the tort of conversion occurred in this case. As such, the lower court erred in dismissing Appellants-Plaintiffs' conversion claims.

## CONCLUSION

For the foregoing reasons, this Court should REVERSE the District Court's Order granting summary judgment and remand for further proceedings.

## REQUEST FOR ORAL ARGUMENT

Pursuant to Federal Rule of Appellate Procedure 34(a) and U.S. Court of Appeals for the Fourth Circuit Local Rule 34(A), Appellants-Plaintiffs respectfully request oral argument in this case because such argument will aid the Court in deciding the issues presented in this appeal.

Respectfully submitted this the 29th day of September 2021,

JUSTICE IN ACTION LAW CENTER

**/s/: Alesha S. Brown**
Alesha S. Brown, NC Bar # 53000
521 Briar Creek Road
Charlotte, NC, 28205
P: (704) 500-0197
F: (704) 500-0197
abrown@justiceinactionlaw.com
*Counsel for Appellants*

## CERTIFICATE OF COMPLIANCE

The undersigned counsel of record hereby certifies that pursuant to Federal Rule of Appellate Procedure Rule 32(a), that the foregoing Brief of Appellant contains no more than 7,084 words and is prepared using Microsoft Word in proportional 14-point Times New Roman font.

JUSTICE IN ACTION LAW CENTER

**/s/: Alesha S. Brown**
Alesha S. Brown, NC Bar # 53000
521 Briar Creek Road
Charlotte, NC, 28205
P: (704) 500-0197
F: (704) 500-0197
abrown@justiceinactionlaw.com
*Counsel for Appellants*